IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER J. POLINSKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | No. 3:24-cv-3267-X-BT |
| | § | |
| AVONDALE PREMIER | § | |
| COLLECTION, and PREMIERE CAR | § | |
| COLLECTION, *an Avondale* | § | |
| *Dealership,* | § | |
| | § | |
| Defedants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and Special Order 3, this *pro se* civil action was referred to the United States magistrate judge for case management, including the entry of findings and a recommended disposition where appropriate. Upon review of the relevant pleadings and applicable law, the Court should **DISMISS** this case **WITH PREJUDICE** for failure to state a claim.

## I.    BACKGROUND

On December 26, 2024, Peter J. Polinski proceeding *pro se* and *in forma pauperis*, filed this action against Avondale Premier Collection and Premiere Car Collection, a car dealership in Dallas, Texas. *See* ECF No. 3. Polinski alleges constitutional violations and various statutory claims arising from the dealership's refusal to finance his purchase of a Rolls Royce Ghost. *See id.*

Polinski has filed several amended complaints all alleging substantially the same claims and violations. *See* ECF Nos. 9, 12, 13. Under Federal Rules of Civil Procedure Rule 15(a), a party may amend its pleadings "once as a matter of course" before service of process. Fed. R. Civ. P. 15(a). Thereafter, a complaint may be amended only with leave of the district court. *Id.*; *see also United States ex rel. Willard v. Human Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Here, Polinski filed an amended pleading (ECF No. 9), but then submitted two additional amended complaints (ECF Nos. 12 and 13) without seeking leave of court.  Ordinarily, such pleadings would have no legal effect. *See Ferris Plaza, Ltd. v. Peerless Indem. Ins. Co.*, 2010 WL 2540826, at *3 (N.D. Tex. June 22, 2010) (explaining that an amended complaint filed without leave of court had "no legal effect"). In this instance, however, the Court will liberally construe Polinski's filings and treat the most recent amended complaint (ECF No. 13), as the operative pleading.

Polinski has also filed multiple "emergency" and other motions in this case, several of which required no immediate judicial action. *See* ECF Nos. 17-25, 28-29. This pattern of repetitive and procedurally irregular filings is consistent with conduct Polinski has exhibited in other federal courts. A search of judicial dockets uncovered that Polinski has filed numerous actions in other federal courts arising from similar theories involving alleged negotiable instruments, private credit instruments, or purported constitutional violations. In a recent decision, the Court of Federal Claims noted that Polinski "has filed a dozen cases in this Court," most

of which were dismissed for lack of jurisdiction, frivolity, or failure to comply with court orders, and that his filings demonstrated "a concerning pattern of meritless filings." *Polinski v. United States*, 177 Fed. Cl. 782, 786-87 (2025). The court also directed him to show cause why he should not be subject to an anti-filing injunction. *Id.* In a subsequent order, that court further admonished Polinski for "abusive litigation tactics," including the repeated filing of non-meritorious emergency motions and reliance on fabricated authority. Order and Notice, No. 25-760 (Fed. Cl. Sept. 3, 2025).

These decisions underscore the repetitive nature of Polinski's filings in federal courts and the consistent judicial conclusion that his claims lack any cognizable legal basis. That same pattern is evident here. Despite multiple amended filings and an opportunity to clarify his allegations through a Magistrate Judge's Questionnaire (the "MJQ"), Polinski has not articulated any facts that would support a viable federal cause of action.

Although Polinski's amended pleading is difficult to decipher, the Court liberally construes it to assert constitutional claims under 42 U.S.C. § 1983 for alleged violations of the Fourth, Fifth, and Thirteenth Amendments, as well as statutory claims under the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA), and the Sherman Act. In addition, Polinski seeks more than $30 million in compensatory and punitive damages, arising from the dealership's alleged refusal to process or approve his credit application.

## II.  LEGAL STANDARD AND ANALYSIS

### A. Legal Standard

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss an *in forma pauperis* complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Even under the liberal construction afforded *pro se* pleadings, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although courts liberally construe *pro se* pleadings, they do not accept "conclusory allegations" or "legal conclusions masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Moreover, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006). Here, Polinski's claims rest on the assertion that a private car dealership violated his constitutional rights by denying him credit to purchase a Rolls Royce. Those allegations do not support any federal claim.

## B. Polinski's Constitutional Claims Fail for Lack of State Action

To state a § 1983 claim, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Doe ex rel. Magee v. Covington Cnty. Sch. Dist., 675 F.3d 849, 854 (5th Cir. 2012) (quoting James v. Tex. Collin Cnty., 535 F.3d 365, 373 (5th Cir.2008)).

Polinski asserts claims under 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights. The only defendants identified, however, are private parties—employees of Avondale Premier Collection—and all alleged conduct arises from a private commercial transaction involving his attempt to purchase a Rolls Royce. *See* ECF No. 13 at 5-7 (allegations concerning denial of financing). His responses to the MJQ confirm the same: he alleges exclusively private conduct and does not identify any governmental actor or any state involvement of any kind. *See* ECF No. 27 (responses throughout). Because private conduct is not actionable under § 1983, Polinski's claims fail at the threshold for lack of state action.

Nor do Polinski's attempts to rely on federal regulation or database access establish state action. He contends that the dealership is federally regulated, uses DMV databases, and operates as a "de facto federal financial intermediary." ECF No. 27 at 2-3. These arguments fail as a matter of law. Private parties are not state actors merely because they are licensed or regulated by the state. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982); *see also Johnson v. State Farm Mut.*

*Automobile Ins. Co.*, 520 S.W.3d 92, 101 (Tex. App.—Austin 2017) ("A private party's actions should not be construed as state action simply because the private party is licensed by the state."). Likewise, extensive state or federal regulation— such as that applicable to the automobile or insurance industries—does not convert private conduct into state action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 42 (1999); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350-51 (1974).

Further, none of the limited circumstances under which private conduct may be attributed to the government apply here. The Supreme Court recognizes state action only when: (1) the private party performs a public function; (2) the state coerced or "significantly encouraged" the conduct; (3) the state is "responsible" for the private party's actions; or (4) the state is a joint participant in the challenged conduct. *See Murthy v. Missouri*, 603 U.S. 43, 55 (2024); *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'")). None of these circumstances exist here. Merely accessing government databases in the ordinary course of business or operating under state licensing requirements does not transform private parties into state actors. *See Blum*, 457 U.S. at 1011 (receipt of government funding and extensive regulation is insufficient to transform private businesses into state actors); *see also Rendell-Baker*, 457 U.S. at 841-43 (same).

6

Because Polinski fails to allege any facts suggesting that Defendants acted under color of state law, all of his § 1983 claims must be dismissed.

## C. Polinski's Constitutional Claims Fail Even if State Action Were Present

Even assuming that Defendants acted under color of state law, Polinski's constitutional claims still fail because he has not plausibly alleged the deprivation of any federally protected right. His allegations arise entirely from a private business's refusal to extend consumer credit—conduct that does not implicate the Fourth Amendment, establish a protected property interest under the Fifth Amendment, or remotely resemble involuntary servitude prohibited by the Thirteenth Amendment.

To begin, a credit application voluntarily submitted to a private business is not "seized" within the meaning of the Fourth Amendment. The Amendment protects against unreasonable government interference with an individual's possessory interests. A seizure occurs only where there is "some meaningful interference with an individual's possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). And individuals have no reasonable expectation of privacy in business or financial records they voluntarily provide to third parties. *See United States v. Miller*, 425 U.S. 435, 440-41 (1976) (bank records voluntarily conveyed to financial institution are not protected by Fourth Amendment); *Smith v. Maryland*, 442 U.S. 735, 743 (1979) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.")). The dealership's handling or denial of Polinski's application therefore cannot

7

constitute a seizure. Likewise, Polinski has no constitutionally protected property interest in receiving credit approval. The Fifth Amendment's Takings Clause is implicated only when the government takes private property for public use. *See Miller*, 425 U.S. at 440-41 (no protected property interest in voluntarily submitted financial documents). A denied credit application does not deprive a person of property, and there is no constitutional right to obtain a loan on demand.

Finally, Polinski's Thirteenth Amendment theory—that he was subjected to involuntary servitude because he was "forced" into litigating this case—is without merit. *See* ECF No. 27 at 8-9. To state a Thirteenth Amendment claim, a plaintiff must allege that he was subjected to "involuntary servitude," and was compelled by "the use or threatened use of physical or legal coercion" to work for another's benefit. *See United States v. Kozminski*, 487 U.S. 931, 952 (1988). Courts have likewise recognized that even compelled professional services in aid of the judicial process do not constitute involuntary servitude. *See, e.g., United States v. Dillon*, 346 F.2d 633, 635-36 (9th Cir. 1965) ("The enforcement of civil rights by compelling the incidental giving of personal services cannot be considered an imposition of involuntary servitude."); *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) (citation omitted) ("A § 1983 plaintiff, even if demonstrably indigent, is not entitled to appointed counsel as a matter of right."); *see also Gibson v. Marsh*, 710 S.W.2d 107, 109 (Tex. App.—El Paso 1986, no writ) (rejecting argument that appointed representation of a criminal defendant, even with limited compensation, violates the Thirteenth Amendment).

Here, Plaintiff does not allege that any defendant used physical force, threats of criminal sanction, or other state-imposed legal coercion to force him to work for another's benefit. He chose to file this lawsuit and to proceed without counsel, and he remains free to dismiss the case or seek representation at any time. The ordinary burdens of self-representation in civil litigation are not "servitude" within the meaning of the Thirteenth Amendment. *See Dillon*, 346 F.2d at 635-36; *see also Gibson*, 710 S.W.2d at 108-10. Polinski's involuntary servitude theory therefore "lacks an arguable basis in law" and is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

Because Polinski's allegations do not plausibly describe any constitutional violation, all of his § 1983 constitutional claims must be dismissed.

### D. Polinski's Statutory Claims Fail as a Matter of Law

Polinski's remaining claims under the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA), and the Sherman Act likewise fail because his allegations do not support any statutory violation. Although he characterizes Defendants' refusal to approve his financing application as unlawful or discriminatory, the statutes he invokes do not reach the conduct described in his complaint or in his MJQ responses.

Starting with the FCRA, Polinski alleges that Defendants violated federal law by accessing his credit report and then denying his application. *See* ECF No. 13 at 6; ECF No. 27 at 11-13.  But the FCRA does not regulate the denial of credit in this way. Its relevant obligations fall on "furnishers" of credit information—entities that supply information to consumer reporting agencies—not on creditors who merely

pull a credit report in evaluating an application. *See* 15 U.S.C. § 1681s-2. Polinski does not allege that Defendants supplied false information to any agency or failed to correct inaccurate information. Instead, he alleges only that the dealership accessed his report and declined to extend credit, which the statute explicitly permits. *See* 15 U.S.C. § 1681b(a)(3)(A) (permissible purpose includes evaluating a consumer's eligibility for credit). His theory that his credit application is not "consumer debt" but rather a private trust instrument does not change the analysis. The statutory framework applies to precisely the kind of personal-use vehicle financing Polinski sought; nothing in the FCRA supports his contrary interpretation.

His ECOA claim fares no better. Polinski asserts that he was "discriminated" against when Defendants refused to accept his self-styled "private credit instrument" and failed to recognize him as a "lawful and original creditor." *See* ECF No. 13 at 5-7; ECF No. 27 at 14-17.  The ECOA prohibits discrimination only on specific protected bases—race, color, religion, national origin, sex, marital status, age, or receipt of public-assistance income. 15 U.S.C. § 1691(a). Courts regularly reject ECOA claims where, as here, the applicant offers only disagreement with a lender's underwriting decision rather than evidence of prohibited discrimination. *See, e.g., Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 777-78 (6th Cir. 2004) (affirming dismissal where borrower "failed to present" any direct evidence of racial discrimination and could not show lender approved similar applications).  Even accepting his allegations as true, a creditor's refusal to extend

financing based on an applicant's unconventional theories about credit does not suggest discrimination within the meaning of the statute.

Finally, Polinski's Sherman Act theory does not supply a viable federal claim. Polinski alleges that Defendants "restrain[ed] trade" by refusing to process his application and by purportedly coordinating with unnamed institutions to block the use of "non-traditional" financial instruments. *See* ECF No. 13 at 7-8; *see also* ECF No. 27 at 15-17. To state a Sherman Act claim, a plaintiff must allege "(1) [the defendants] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market." *Dexon Computer, Inc. v. Cisco Sys., Inc.*, No. 5:22-CV-53-RWS-JBB, 2023 WL 2941414, at *16 (E.D. Tex. Feb. 7, 2023)*, report and recommendation adopted, No. 522CV00053RWSJBB, 2023 WL 2730656 (E.D. Tex. Mar. 31, 2023) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014)).

Here, Polinski identifies no agreement between Defendants and any party other than himself. A single firm's independent decision regarding its own business practices—such as its underwriting criteria—does not constitute a conspiracy. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768-69 (1984). Moreover, a dealership's decision not to finance a particular transaction does not restrain trade in any relevant market. Polinski's argument that Defendants "coordinate[d] with financial clearing agents and affiliated institutions to block the use of non-traditional but lawful financial instruments" is entirely

speculative and unsupported by any factual allegations. ECF No. 27 at 16-17. Such conclusory allegations of conspiracy are insufficient. *Twombly*, 550 U.S. at 555.

Taken together, these assertions reflect dissatisfaction with a private lender's decision not to extend credit, not conduct that violates federal statutory protections. Because Polinski's allegations do not state a plausible claim under the FCRA, ECOA, or Sherman Act, and because further amendment would not cure the legal defects identified, dismissal is warranted.

### III.   SANCTIONS

Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *Mendoza v. Lynaugh,* 989 F.2d 191, 195-97 (5th Cir. 1993); *see also Whitehead v. Food Max of Miss., Inc.,* 332 F.3d 796, 802-03 (5th Cir. 2003) (a violation of any provision of Rule 11(b) justifies sanctions). *Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986). Moreover, litigants who abuse the judicial process are "not entitled to sue and appeal without paying the normal filing fees -- indeed, are not entitled to sue and appeal, period." *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989).

In light of Polinski's extensive history of meritless filings in other federal courts and the determinations made in *Polinski v. United States*, 177 Fed. Cl. 782 (2025), the Court notes that similar patterns have emerged in this case. The Court of Federal Claims' admonitions illustrate that Polinski has repeatedly advanced

legally baseless claims and has previously required judicial warnings regarding abusive filing practices. The Court should find that Polinski is a vexatious litigant and direct the clerk of the court not to accept any further actions from him unless he first obtains leave from a district or magistrate judge. *See* Fed. R. Civ. P. 11(b)(2) and (c)(1) (providing for sanctions against *pro se* litigants).

## IV. LEAVE TO AMEND

"Rule 15 is a liberal standard that favors leave, but that preference has no purchase when amendment cannot cure the defect." *Ellsworth v. Dallas Texas Dep't of Veteran Affs.*, --- F.4th ---, 2025 WL 3239806, at *5 (5th Cir. Nov. 20, 2025) (O'Connor); *see also Sanders v. Deluxe*, 2025 WL 3491013, at *3 (N.D. Tex. Nov. 14, 2025) (Rutherford, J.), rec. adopted, 2025 WL 3488340 (N.D. Tex. Dec. 4, 2025) ("Ordinarily, a pro se plaintiff should be granted the opportunity to amend her complaint prior to a dismissal.") But leave to amend is not required when the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009).

Here, the Court sent Polinski a Magistrate Judge's Questionnaire and ordered Polinski to state all facts that support his claims in response to this questionnaire. Polinski has, therefore, pleaded his "best case," and granting leave to amend would be futile and cause needless delay. Polinksi's complaint should be dismissed with prejudice.

## V. RECOMMENDATION

For the foregoing reasons, the Court should **DISMISS** this case **WITH PREJUDICE** for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).

In addition, the Court should find that Polinski is a vexatious litigant and direct the clerk of the court not to accept any further actions from him unless Polinski first obtains leave from a district or magistrate judge.

SO RECOMMENDED.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

14

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).*